# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MARY A. TURBERVILLE,          )
                              )
            Plaintiff,        )
                              )
     v.                       )      1:11CV262
                              )
CAROLYN W. COLVIN,            )
Acting Commissioner of Social )
Security,[1]                  )
                              )
            Defendant.        )

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Mary A. Turberville, brought this action pursuant to Section 205(g) of the Social Security Act ("the Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The Court has before it the certified administrative record (cited herein as "Tr. __") and the parties have filed cross-motions for judgment (Docket Entries 7, 10). For the reasons that follow, the Court should enter judgment for Defendant.

**PROCEDURAL HISTORY**

Plaintiff applied for DIB, alleging a disability onset date of July 29, 2006. (Tr. 101-05.) After denial of that application

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, resulting in her substitution as Defendant, pursuant to Federal Rule of Civil Procedure 25(d).

initially (Tr. 48, 50-53) and on reconsideration (Tr. 49, 58-66), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 67). Plaintiff and a vocational expert ("VE") appeared at the hearing. (Tr. 20-47.) The ALJ thereafter ruled Plaintiff not disabled within the meaning of the Act. (Tr. 9-19.) The Appeals Council subsequently denied Plaintiff's request for review, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review. (Tr. 1-5.)

In rendering this disability ruling, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2011.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since July 29, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. [Plaintiff] has the following severe impairments: psoriasis, hypertension, controlled diabetes mellitus, right knee arthritis, and anxiety and depression (20 CFR 404.1520(c)).
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).
>
> . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except [Plaintiff] would be limited to non-complex, routine, repetitive tasks (i.e., unskilled work) (decrease in the ability to concentrate on and

attend to work tasks and/or borderline intellectual functioning (BIF)(SSR 71-84)[)]. [Plaintiff] would be unable to work at a production rate involving piece work (production=work stress).

(Tr. 14-17.)

In light of the findings regarding residual functional capacity ("RFC") and the testimony of the VE, the ALJ determined that Plaintiff could perform her past relevant work as a sales attendant as actually and generally performed. (Tr. 18.) Accordingly, the ALJ decided that Plaintiff had not suffered from a "disability," as defined in the Act, at any time from the alleged onset date through the date of decision. (Id.)

## **DISCUSSION**

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

3

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In confronting that issue, the Court must note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Hall, 658 F.2d at 264. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy

6

whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

### **Assignments of Error**

Plaintiff argues that the ALJ erred in formulating the RFC (and thus by resolving step four of the SEP against Plaintiff in reliance on an errant RFC). (Docket Entry 8 at 3-6.) Specifically, Plaintiff asserts that the ALJ improperly evaluated

---

work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

(1) Plaintiff's credibility as it relates to her reporting of psoriasis symptoms (id. at 3-5); and (2) the opinion of consultative examiner Bert A. Lucas, Ph.D. (id. at 5-6). Defendant contends otherwise and urges that substantial evidence supports the ALJ's finding of no disability. (Docket Entry 11 at 3-8.)

1. **Symptom Credibility Evaluation**

According to Plaintiff, the ALJ incorrectly relied upon "the absence of lesions on the palms of [Plaintiff's] hands and soles of [her] feet" and the lack of any restriction of motion or other limitation of Plaintiff's extremities in discounting her reporting about the severity of her psoriasis. (Docket Entry 8 at 4.) Plaintiff maintains that the ALJ erred by requiring Plaintiff "to produce objective evidence of the limiting effects of her painful itchiness." (Id.) That argument lacks merit.

The Social Security Administration's Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, as applied by the Fourth Circuit in Craig, 76 F.3d at 594-95, provides a two-part test for evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (quoting 20 C.F.R. § 404.1529(b)). Upon

8

satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an evaluation of the intensity and persistence of the claimant's symptoms, and the extent to which such symptoms affect his or her ability to work. Id. at 595. In making that evaluation, the fact finder:

> must take into account not only the claimant's statements about her pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id. (internal citations and quotation marks omitted).

Here, the ALJ found as to part one of the inquiry that Plaintiff had impairments that reasonably could have produced the alleged symptoms. (Tr. 17.) At part two, the ALJ deemed Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms not credible to the extent such statements extended beyond the limitations set forth in the RFC. (Id.) In doing so, contrary to Plaintiff's argument, the ALJ did not discount Plaintiff's credibility solely on the basis of the lack of objective evidence of Plaintiff's "painful itchiness." Rather, the ALJ considered all of the Craig factors, which include "medical signs . . . [and] any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms,

9

deteriorating tissues, redness, etc.)," Craig, 76 F.3d at 595 (emphasis added), in reaching the part two conclusion.

For example, the ALJ discussed Plaintiff's statements that she stopped working because of psoriasis symptoms, that she constantly itched and needed to shower two to three times per day, that she had difficulty functioning on her psoriasis medication, and that she became agitated and felt like "someone [wa]s sticking pins and needles all over her." (Tr. 17; see also Tr. 30, 34, 116, 118, 123.) The ALJ also considered the fact that no treating or examining physician offered opinions with restrictions greater than the limitations incorporated into the RFC. (Tr. 18.) Further, the ALJ noted the statement of Plaintiff's spouse that Plaintiff recently enjoyed a gospel concert, that crowds did not bother her, and that she could focus, shop, drive a car without getting lost, and "go places with her daughter in law." (Id.) Moreover, although the ALJ did mention that Plaintiff's psoriasis did not affect her palms or soles, cause any limitation in her extremities, or restrict joint motion (Tr. 17-18), the ALJ derived that conclusion from the RFC analysis of state agency disability examiner Larry Cook, whose analysis state agency physician Dr. Elizabeth S. Hoyt affirmed (compare id., with Tr. 281, 285). The state agency examiner (and, by affirmation, the state agency physician) clearly found the fact that Plaintiff's psoriasis did not impact her extremities or joints relevant and, thus, the ALJ

10

did not err by specifically discussing those findings as part of her credibility analysis at part two.

In sum, the record reveals no reversible error arising from the ALJ's analysis of Plaintiff's symptom reporting.

**2. Dr. Lucas**

Next, Plaintiff contends that the ALJ improperly evaluated the opinion of Dr. Lucas. (Docket Entry 8 at 5-6.) In particular, Plaintiff maintains that the ALJ failed to explain how (or whether) she considered Dr. Lucas's opinion that Plaintiff "'would have difficulty tolerating the stress and pressures associated with day-to-day work activity at this time.'" (Id. at 5 (quoting Tr. 169).) Accordingly, Plaintiff asserts that the ALJ errantly substituted "her own definition of work stress" by only imposing a restriction against "work at a production rate involving piece work." (Id. at 6; see also Tr. 17.) Plaintiff deems the ALJ's "definition of work stress" erroneous, because production-paced work "is not the only cause of pressure and stress associated with day-to-day work activity." (Docket Entry 8 at 6.)

Defendant's response notes that the ALJ expressly discussed Dr. Lucas's opinion about "work stress" in the analysis at step two of the SEP regarding the severity of Plaintiff's impairments. (Docket Entry 11 at 6; see also Tr. 15.) Defendant further asserts that the medical evidence as a whole and the opinions of the state agency psychologists demonstrate that Plaintiff's state of anxiety

during Dr. Lucas's February 2007 examination did not represent "Plaintiff's routine mental condition" since her onset date and, thus, that the ALJ correctly declined to fully credit Dr. Lucas's opinion. (Docket Entry 11 at 5-6.) In reply, Plaintiff asserts that, because the ALJ did not expressly rely on the state agency psychologists' opinions in her decision, Defendant "should not be permitted to rely upon them" in arguments to this Court. (Docket Entry 12 at 3.) Plaintiff cites to <u>Securities & Exch. Comm'n v. Chenery Corp.</u>, 318 U.S. 80, 95 (1943) and <u>Cunningham v. Harris</u>, 658 F.2d 239, 244 n.3 (4th Cir. 1981), along with cases from other Circuits, to argue the impermissibility of such "post hoc rationalization" by Defendant. (Docket Entry 12 at 1-3.) Plaintiff's arguments fall short.

As an initial matter, the ALJ did indeed discuss Dr. Lucas's opinion during the step two analysis, remarking:

> On February 7, 2007, Bert A. Lucas, Ph.D., administered a comprehensive clinical psychological evaluation. A mental status examination reveals [Plaintiff] was oriented by three with no evidence of loosening or associations. She was neatly dressed and maintained good eye contact. Her mood was mildly to moderately anxious and her affect was shallow. She denied hallucinations and suicidal ideation. However, related that she heard a rhythmic chime in her ears at times. Her memory was intact for both recent and remote events, as she was able to provide an adequate review of her developmental, school, work, and medical history, as well as involvement in recent events. <u>Dr. Lucas stated that based on a mental status evaluation, [Plaintiff] was able to understand, retain and follow instructions, sustain attention, and perform simple, routine, repetitive tasks.</u> However, due to her symptoms of anxiety, she had

12

> difficulty concentrating and focusing. She was able to relate with others but not under stressful conditions. As a result, <u>she would have difficulty tolerating the stress and pressures associated with day-[to-]day work activity</u>. Diagnosis included depressive disorder, NOS and a global assessment of functioning (GAF) rated at 55, which indicates only moderate[] symptoms, such as occasional panic attacks.

(Tr. 15 (emphasis added) (citation omitted).) The ALJ's thorough discussion at step two of Dr. Lucas's evaluation, including the specific opinion at issue, clearly suffices to establish that the ALJ properly considered that opinion. See McCartney v. Apfel, No. 01-1439, 2002 WL 191573, at *1 (4th Cir. Feb. 7, 2002) (unpublished) (noting "that the ALJ need only review medical evidence once in his decision"); Kiernan v. Astrue, No. 3:12CV459-HEH, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013) (unpublished) (observing that "[w]here the ALJ analyzes a claimant's medical evidence in one part of his decision, there is no requirement that he rehash that discussion in [a later] analysis").

Moreover, Dr. Lucas's observation that Plaintiff would have "difficulty" tolerating stress in the workplace does not equate to an opinion that Plaintiff reasonably could not do so. See Watkins v. Astrue, No. 1:09CV741, 2011 WL 2791267, at *4 (M.D.N.C. Jul. 14, 2011) (Sharp, M.J.) (unpublished) (noting that doctor's opinion that claimant would have "some difficulty" attending school did not equate to inability), recommendation adopted, slip op. (M.D.N.C. Sept. 26, 2011) (Eagles, J.). Here, the ALJ adequately accounted

13

for Plaintiff's alleged <u>difficulty</u> tolerating stress by formulating an RFC which precluded the stress of production work involving piece rates. (Tr. 17.)

Further, to the extent "difficulty" tolerating stress suggests an "inability" to tolerate stress, the ALJ had no obligation to attribute decisive weight to that aspect of Dr. Lucas's opinion. Unlike with treating sources, the opinions of consulting examiners such as Dr. Lucas do not, as a general proposition, qualify for controlling weight under the Commissioner's regulations. <u>See</u> 20 C.F.R. § 404.1527(d)(2).[6] Further, application of the relevant factors, <u>see</u> 20 C.F.R. § 414.1527(d), did not compel the ALJ to attribute decisive weight to Dr. Lucas's consultative opinion.

To the contrary, as the ALJ noted, just a few days after Dr. Lucas's evaluation, another consultative examiner, Dr. William L. Bell, found Plaintiff's affect normal, with no evidence of psychosis or mental status change. (Tr. 15; <u>see also</u> Tr. 173.) The ALJ also correctly observed that Plaintiff had not sought "any mental health intervention in the past" (Tr. 18), "adamantly refused therapy" when offered by a treating physician (Tr. 15; <u>see also</u> Tr. 288), and enjoyed activities of daily living inconsistent

---

[6] Effective March 26, 2012, a regulatory change re-codified the treating physician rule as 20 C.F.R. § 404.1527<u>(c)</u>(2), but did not impact the substantive language of the rule. <u>See</u> 77 Fed. Reg. 10651–10657 (Feb. 23, 2012). Given that all material events in this action precede this non-substantive re-codification, the undersigned Magistrate Judge will use the pre-March 26, 2012 citations when referencing the treating physician rule.

14

with disabling depression and anxiety, such as driving, shopping, attending concerts and visiting with family (Tr. 18). Finally, the ALJ discussed medical reports from November 2008 which indicated that Plaintiff "was doing better," felt her "medications were helpful," and displayed "a happy and alert affect." (Tr. 15; see also Tr. 287-88.) Under these circumstances, the ALJ's preclusion of production-paced work properly accounted for any stress-related limitations, including as reflected by Dr. Lucas's opinion.

Given the foregoing considerations, the ALJ's handling of Dr. Lucas's opinion does not warrant relief.[7]

## **CONCLUSION**

Plaintiff's assignments of error lack merit.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Summary Judgment (Docket Entry 7) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 10) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld<br>**L. Patrick Auld**<br>**United States Magistrate Judge**

April 23, 2014

---

[7] In reaching this conclusion, the undersigned Magistrate Judge did not rely on opinions regarding Plaintiff's mental RFC not expressly considered by the ALJ. As such, no need exists to address Plaintiff's argument that Defendant's reliance on such opinions in her brief constituted impermissible "post hoc rationalization" (Docket Entry 12 at 3).

15